UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------- x
SHERMON CONNOR,

           Plaintiff,

    -against-

ELMHURST DAIRY, INC. and
LOCAL 584, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,

           Defendants.
---------------------------------------------- x

MEMORANDUM & ORDER

13-cv-4769 (ENV) (LB)

VITALIANO, D.J.

Plaintiff Shermon Connor initiated this action against his former employer, Elmhurst Dairy, Inc. ("Elmhurst") and his union, Local 584, International Brotherhood of Teamsters ("Local 584" or the "union"), alleging violations of the Labor Management Relations Act, 29 U.S.C. § 185 (the "LMRA") and the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(1) (the "LMRDA"). The complaint sought relief in the form of lost wages and benefits, as well as reinstatement. In a Memorandum and Order, dated July 31, 2015, the Court granted summary judgment in favor of defendants because Connor's LMRA and LMRDA claims, based on the alleged illegality of an agreement between Elmhurst and the union modifying the terms of the controlling labor agreement, were untimely. *Connor v. Elmhurst Dairy, Inc.*, No. 13 Civ. 4769 (ENV), 2015 WL 5159185, at *4-6 (E.D.N.Y. Aug. 17, 2015).[1] As for Connor's timely claims, the Court granted summary judgment in favor of defendants because Connor failed to establish a valid hybrid § 301/representation claim, and, even if he had, he did not show that the union's actions were "arbitrary, discriminatory, or in bad faith," as a matter of law. *Id.* at *6-7. Connor now moves

---

[1] The Court presumes the parties' familiarity with the factual background and procedural history of this case, which were recounted in the prior Memorandum and Order, and will not be repeated in detail here.

1

for reconsideration, contending the Court erred in the following ways: (1) the Court did not toll the six-month statute of limitations for his LMRA and LMRDA claims while he pursued internal remedies; (2) the Court erroneously concluded that there was no dispute that Connor learned of the extension agreement on February 5, 2013; (3) the Court erroneously concluded that the statute of limitations for LMRDA claims arising out of labor-management relations is six months; (4) the Court applied the wrong statute of limitations to his LMRA claim against the union for breach of its constitution; and (5) since his LMRDA claims were timely, Connor's hybrid representational claim, which was timely anyway, was viable against Elmhurst and Local 584. (Pl.'s Mot., ECF No. 56).

<u>Applicable Law</u>

Reconsideration of an order is an "'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Anwar v. Fairfield Greenwich Ltd.*, 800 F. Supp. 2d 571, 572-73 (S.D.N.Y. 2011) (citation omitted). "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). In this light, a motion for reconsideration should be granted only when the movant identifies (1) an intervening change of controlling law, (2) the availability of new evidence, or (3) a clear error or manifest injustice. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013). Motions for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257. Whether or not to grant such a motion "is within the sound discretion of the district court." *Equal Emp't Opportunity Comm'n v. Fed. Express Corp.*, 268 F. Supp. 2d 192, 195 (E.D.N.Y. 2003).

2

Discussion

Connor largely attempts to relitigate arguments already made at summary judgment. Specifically, he argued on the first go round that (a) the limitations periods for his LMRA and LMRDA claims regarding the agreement extending the probationary period, were tolled while he pursued internal union remedies and (b) that, in any event, those claims did not accrue on February 5, 2013 because he did not then know of the breach, *i.e.*, the alleged unlawful modification of the collective bargaining agreement. (Pl.'s Br., ECF No. 37, at 1-4). Connor does not, however, point to any change in controlling law calling into question the Court's reliance on *White v. White Rose Food*, 930 F. Supp. 814 (E.D.N.Y. 1996), *aff'd in part*, 128 F.3d 110 (2d Cir. 1997), and *Propst v. Ass'n of Flight Attendants*, 546 F. Supp. 2d 14, 20 (E.D.N.Y. 2008). *White* and *Propst* clearly hold that the six-month statute of limitations for unfair representation claims, based on any supplemental agreement entered into between a union and the employer, begins to run once the employee learns of the union's breach, and any subsequent failure by the union to represent the employee is not treated as a continuing violation relating back to the original breach. *See also Legutko v. Local 816 Int'l Bhd. of Teamsters*, 853 F.2d 1046, 1048 (2d Cir. 1988) ("Because plaintiffs knew of the union's alleged improper activities in connection with the 1983 vote in June 1983, but did not commence their suit until April 1984, almost ten months later, the district court properly dismissed their claims as time barred under the six month statute of limitations applicable to their LMRA and LMRDA claims.").

Indeed, as Connor correctly points out, the statute of limitations for hybrid claims against a union and the employer may be tolled while an employee seeks relief through the union's internal grievance process. *See id.* at 1053-55. Crucially, though the toll is not broader than that -- "courts have distinguished between tolling to exhaust the internal grievance process versus tolling for appeals, particularly to the NLRB." *Sanchez v. Local 660, United Workers of Am.*, 25 F. Supp. 3d

3

261, 266 (E.D.N.Y. 2014) (citations omitted). In fact, the "'bringing of [an] NLRB charge establishes that [the employee] had actual knowledge of the breach'" by that date, and, therefore, "there is no additional tolling at that point." *Id.* (quoting *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 55 (2d Cir. 2003)) (citing *LaVigna v. WABC Television, Inc.*, No. 92-CV-4330, 1993 WL 288206, at *2 (S.D.N.Y. July 23, 1993)); *see also Lettis v. U.S. Postal Serv.*, 39 F. Supp. 2d 181, 194 (E.D.N.Y. 1998). Put another way, once an employee files an NLRB charge against a union, there is no more tolling. *Sanchez*, 25 F. Supp. 3d at 266; *see also Wallace v. Seacrest Linen*, No. 04-CV-6035, 2006 WL 2192777, at *8 (S.D.N.Y. Aug. 2, 2006) (citing *Mazlish v. Branch 36, Nat. Ass'n of Letter Carriers AFL-CO*, No. 04-CV-3943, 2005 WL 1244793, at *5 n.4 (S.D.N.Y. May 26, 2005) (citing *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 55 (2d Cir. 2003))).

In applying these principles, as the Court determined, Connor's claims arising out of the extension agreement are untimely. February 5, 2013, is the keystone point of reference. It was on that date that Elmhurst terminated him. Doubtless, through this notice of termination, Connor learned of the probationary period created by the extension agreement. But even if there was doubt, the deal was further explained that very day at a termination meeting Connor does not deny he attended. So, Connor struggles, as he must, to argue that a meaningful dispute exists as to whether he was then on notice of the extension agreement's existence and its effect against his interests.[2]

---

[2] While not flat out denying that his termination notice also put him on notice of the extension agreement, Connor suggests that he could not be certain of the extension agreement's existence until he received a physical copy of it in discovery, and, therefore, the Court cannot conclude he was put on notice of his claim on February 5, 2013. The weaving and bobbing in Connor's argument about written notice aside, that Connor was "on notice," as of February 5, 2013, is iron clad. (Compl. ¶ 14 (stating that, during the February 5, 2013 termination meeting, Connor "was told that the probationary period had been extended to sixty days by agreement between the Employer and the Union")). He does not deny, because he cannot, that he had actual notice of a termination of employment he believed was in violation of the valid and existing collective bargaining agreement between Elmhurst and his union. Were district courts to adopt Connor's proposition, the statute of limitations would cease to exist and any action premised on the allegedly unlawful execution of an agreement would not expire until the plaintiff received a copy of the agreement in discovery *after* the action commenced.

Strong support for the conclusion that he was on notice of his claim is found in a letter dated February 8, 2013, in which Connor requested Local 584's assistance in filing a grievance. (Pl.'s Letter, Feb. 8, 2013, ECF No. 46-28). Liberally construing February 8, 2013 as the formal start of Connor's internal grievance process,[3] the statute of limitations was tolled with not less than two days having already expired. Then, on February 26, 2013, Connor filed a charge against the union indicating that "[s]ince on or around February 24, 2013, [Local 584], by its agents and representatives, has failed and refused to process Shermon Connor's grievance over [Elmhurst's] unlawful layoff on February 5, 2013." (NLRB Charge, Feb. 26, 2013, ECF No. 46-38). The toll was ended by the filing of the NLRB charge, which unequivocally indicates that Connor believed the union was no longer assisting him with his internal grievance no later than February 24, 2013. Working out the math from these milestones, the six-month statute of limitations clock began to run on February 5, 2013, was tolled for 17 days (from February 8, 2013 to February 24, 2013) and, after re-starting, expired, generously, on August 22, 2013. Connor commenced this lawsuit on August 23, 2013. (Compl., ECF No. 1).

As previewed earlier, there is, to be sure, another string on Connor's bow. In his motion for reconsideration, Connor presses that the statute of limitations for LMRDA claims is three years, not six months. (Pl.'s Br. at 5-6). He submits that the Second Circuit's decision in *Legutko* was superseded by the Supreme Court in *Reed v. United Transportation Union*, 488 U.S. 319, 109 S. Ct. 621, 102 L. Ed. 2d 665 (1989). He is mistaken. *Reed* did not supersede *Legutko*—it concerned a

---

[3] This construction may tilt the balance unfairly in Connor's favor. "Informal correspondence should not toll the statute of limitations." *Legutko*, 853 F.2d at 1054 (citations omitted). This includes letters written by an aggrieved employee indicating his or her intention to pursue the local union's internal grievance procedures. *Id.* Until an employee properly follows procedures set forth in the union's constitution for bringing grievances, the statute of limitations is not tolled. *Id.* (citations omitted). The Court need not address whether Connor's letter qualifies for tolling the statute of limitations because, even if it did, it would not make his complaint here timely. Without the benefit of the toll, the complaint would be time barred by nearly three weeks.

claim arising out of § 101(a)(2) of the LMRDA, rather than § 101(a)(1), and explicitly did not decide what statute of limitations applies for anything other than § 101(a)(2). 488 U.S. at 333 n.7. Although *Reed* established important guideposts for district courts in borrowing state statutes of limitations for certain labor disputes, contrary to Connor's contention, the Second Circuit continues to "'borrow[] the Section 10(b) limitations period where claims have directly implicated the collective bargaining relationship." *United Paperworkers Int'l Union & Its Local 340 v. Specialty Paperboard, Inc.*, 999 F.2d 51, 53-54 (2d Cir. 1993) (quoting *Phelan v. Local 305 of United Ass'n of Journeymen, & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Can*, 973 F. 2d 1050, 1060 (2d Cir. 1992) (distinguishing claims that "have directly implicated the collective bargaining relationship," which are subject to the six-month statute of limitations, from a personal injury conspiracy claim, which is subject to a three-year statute of limitations)). It is settled, under the circumstances of this case, that a six-month statute of limitations applies to Connor's LMRDA claims.

Connor contends, similarly and with equal lack of success, that the Court should otherwise have applied the New York statute of limitations for breach of contract, which is six years, instead of the six-month limitations period, for his LMRA claim. However, as explained in *Phelan*, the applicable state statute of limitation should be borrowed provided the claim "does not relate to the formation of a collective bargaining agreement," and does "not have a direct and immediate impact on union-management relations." 973 F.2d at 1061 (citing *Legutko*, 853 F.2d at 1050-52). *Legukto* refused to apply New York's six-year statute of limitations to a breach of union constitution claim challenging the voting process for a supplemental rider to the collective bargaining agreement because the suit "implicate[d] those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective bargaining agreement and the private settlement of disputes under it." 853 F.2d at 1051 (quoting *Monarch Long Beach Corp. v. Soft Drink Workers,*

*Local 812, Int'l Bhd. of Teamsters*, 762 F.2d 228, 231 (2d Cir. 1984) (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983))). Again, as discussed above and in the Court's July 31, 2015 Memorandum and Order, such is the case here. Therefore, the six-month statute of limitation applies rather than New York's breach of contract standard.

Furthermore, as noted in the Court's original decision, because the entirety of Connor's complaint relies on the alleged illegality of the execution by the union and Elmhurst of the extension agreement and because that claim is untimely, the case itself must be dismissed. *See Lettis*, 39 F. Supp. 2d at 195 (quoting *Local Lodge No. 1424 v. NLRB*, 362 U.S. 411, 416-17, 80 S. Ct. 822, 4 L. Ed. 2d 832 (1960)) ("[W]here conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice . . . . [a]nd where a complaint based upon that earlier event is time-barred, to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice."). In sum, Connor has presented neither a showing of any factual misapprehension, nor intervening change of controlling law, nor the availability of new evidence, nor a clear error or manifest injustice. Consequently, plaintiff has not established a proper basis for reconsideration.

## Conclusion

For the reasons stated above, plaintiff's motion for reconsideration must be, and hereby is, denied. The case will remain on the closed docket.

So Ordered.

Dated: Brooklyn, New York
January 7, 2016

/s/ USDJ VITALIANO

ERIC N. VITALIANO
United States District Judge

7